## PRAY v MEIER

Ohio Appeals, 8th Dist, Cuyahoga Co

No 18424. Decided Jan 19, 1942

Harrison & Marshman, Cleveland, for plaintiff-appellee.

McKeehan, Merrick, Arter & Stewart, Cleveland, for defendant-appellant.

### OPINION

By SKEEL, J.

The plaintiff-appellee, a resident of the City of Cleveland, was injured while driving his motorcycle in a nor-therly direction on East 12th Street as he was passing through the intersection of East 12th Street with St. Clair Avenue. At the point where St. Clair Avenue, which runs east and west, intersects East 12th Street, which runs north and south, there is a traffic control signal light suspended above the center of the intersection. Plaintiff-appellee claims that the signal light was green or "go" for north and southbound East 12th Street traffic at the time he entered the intersection, and that the defendant, through his agent and servant who was then driving a motor vehicle easterly on St. Clair Avenue in the course and scope of his employment, and in disregard of the red or "stop" light then displayed for eastbound traffic by said traffic control signal light, "crashed" the light and struck the plaintiff, while he, the plaintiff was driving his motorcycle as above described.

The collision occurred on the 3rd day of June, 1936, at about 8:20 A. M. The driver of the car with which the plaintiff came into collision was Mr. Fred Muenkel, an employee of the defendant who had come to Cleveland at the expense of the defendant to attend a sales class conducted by the White Motor Company at its place of business at East 79th and St. Clair Avenue in Cleveland, Ohio.

There are two questions presented by this appeal.

1. Did the Court of Common Pleas acquire jurisdiction of the defendant?

2. Was there sufficient evidence to require submission to the jury the question whether Muenkel had express or implied authority to drive his personal car to Cleveland to attend the salesmanship course?

The defendant was a dealer in White trucks at Madison, Wisconsin. As indicated, the defendant employed Mr. Muenkel as a truck salesman. In the latter part of May, 1936, a representative of the White Motor Company while calling on defendant and in the interest of advancing the sale of White trucks, went with Muenkel to interview a prospective customer. After such interview this representative re-

ported to defendant that Muenkel needed instruction as a White truck salesman and suggested that he be sent to the company school at the general office in Cleveland, Ohio. The defendant agreed to send Muenkel and defray his expenses. Muenkel journeyed to Cleveland by the use of his personal automobile. There is no controversy in the record as to the fact that Muenkel did not use his personal automobile as a means of transportation while about his work for the defendant in Madison, and the defendant insists that there is no evidence in the record to justify a finding that Mr. Muenkel was authorized either expressly or by implication, to use his personal car on the Cleveland trip.

In considering the issues before us, it seems logical to first take up the question of whether or not there was sufficient evidence in the record to require submission to the jury the question of Munekel's authority to use his personal car in attending the school.

The only evidence in the record on this subject is that which comes from the defendant himself and from the entries made in his books of account; Muenkel having died before any attempt was made to take his testimony.

The accounts show that during the time Muenkel was in Cleveland he received his weekly drawing account and in addition, on or about June 9th a charge was recorded in the defendant's books in the sum of $42.00 which was charged to "truck sales expense". The defendant is most indefinite as to how or when this amount was paid and the purpose of the expenditure. But it is not denied by the defendant that this is the only amount disclosed on his accounts, which in any way could have represented Muenkel's expenses on the Cleveland trip. Defendant testified that Muenkel was in Cleveland about two weeks but from the other evidence it is extremely doubtful whether or not he was away longer than from the second of June, the day before the accident, to the 9th of June, the day the books show he received his weekly advance, and the charge was made that in all reasonable probability represent-

ed his expense account. Even if it is in fact true that Muenkel was away only eight days instead of fourteen days as testified to by defendant, $42.00 would be a very meager allowance if as an item of expense it was to include 1000 miles of railroad fare as well as board and room during his stay in Cleveland. At least such circumstances might well indicate that the cheapest method considered, from the standpoint of immediate cash outlay for travel, was in the contemplation of the parties, particularly since the defendant was in the automobile business.

Examining the record of the defendant's testimony on what was said between the defendant and Muenkel just before Muenkel left, is by no means conclusive that he, Muenkel, was specifically directed to go by train.

In fact, this testimony in its entirety, is susceptible of the conclusion that what the defendant meant by referring to the railroad fare was that no matter what means Mr. Muenkel chose to travel to Cleveland, the defendant would settle the expense account on the basis of the cost of traveling by rail.

At least it must be said that reasonable minds might reach different conclusions when considering such evidence as it applied to this issue, now under consideration, which presents a jury question.

The court, in its charge, clearly told the jury that if the defendant instructed his servant to go by train, and the servant, in disregard of such instruction, drove his motor vehicle, such conduct on the agent's part would be outside the scope of his employment, and the master would not be liable to any person injured through the negligence of the agent while thus violating his specific instructions. The jury found for the plaintiff on this issue, and we cannot say that such finding is manifestly against the weight of the evidence.

Coming now to the question of jurisdiction. Service was had upon the defendant by virtue of §6308-1 GC. This sections provides:

"Service of process upon non-resident owners or operators of motor vehicles:

Any non-resident of this state, being the operator or owner of any motor vehicle, who shall accept the privilege extended by the laws of this State to non-resident operators and owners of operating a motor vehicle or of having the same operated within the State of Ohio, shall, by such acceptance or licensure, as the case may be, and by the operation of such motor vehicle, within the State of Ohio, make and constitute the Secretary of State of the State of Ohio his, her, or their agent for the service of process in any civil suit or proceeding instituted in the court of the State of Ohio against such operator or owner of such motor vehicle, arising out of or by reason of any accident or collision occurring within the State in which such motor vehicle is involved."

It will be remembered that the automobile involved in the accident did not belong to the defendant. It was the property of the defendant's employee. As indicated above there is evidence in the record tending to establish that said employee was driving his own car in carrying out his employer's instructions and while acting within the cause and scope of his employment. So, we are met squarely with this question:—Do the provisions of the statute include the right to serve a non-resident who is not the owner or the actual driver of a motor vehicle but who is the employer of the driver, when such driver is driving his own motor vehicle in Ohio in carrying out his employer's instructions and while acting within the cause and scope of his employment, negligently caused injury to the plaintiff?

The purpose of the statute is to give the right to citizens of this State to bring before the courts of their domicile, non-residents who have availed themselves of the privileges of our highways and by the negligent conduct either of themselves or their employees, caused such citizens injury and damages. It was certainly not the purpose of the legislature to limit the benefits of such a statute to any small or restricted group. Without question a sizeable volume of the travel over the roads of Ohio is by non-residents. Some of them drive their own cars while others are either driving their employer's vehicles or are driving their own vehicles while acting in the course and scope of their employment.

The statute above quoted, when interpreted in the light of the purposes to be accomplished clearly includes within its provisions; 1, the owner who is operating his automobile; 2nd, the owner whose vehicle is being operated at his command by his agent or servant; 3rd, a non-owner who is having the vehicle of another operated in carrying out his own purposes within the State of Ohio. The word "operator", is thus to be understood to mean one for whose purposes a motor vehicle is being operated as well as one who is performing the physical act of operating a motor vehicle.

Such interpretation certainly does not strain or exaggerate a single word of the section, which, as above quoted provides:

"Any non-resident of this state, being the operator or owner" (meaning the one at whose direction, and for whose interest the vehicle is being operated, regardless of who is the actual owner thereof, or one who is the owner thereof in the sense that he has the present right of property or possession thereof) "of any motor vehicle, who shall accept the privilege extended by the laws of this state to non-resident operators and owners (repeated and carrying the same meaning as above) of operating a motor vehicle or having the same operated within the State of Ohio."

Certainly the mere ownership of a motor vehicle which is being operated by a bailee could have no legal significance. The significant question is, for whose purposes and at whose direction is the vehicle being operated? The evil to be corrected as before stated, is to provide means of calling a

non-resident to the bar of justice of this State to answer the claims of our residents that while using the priviledges of our highways such non-resident operator or owner through the negligent operation of a motor vehicle caused damages. Operation, either as owner or through the agency of an employee, is the potential force that is capable of doing damage and the actual ownership of the vehicle is of no legal importance.

In the case of Jones v Pebler, 371 Ill. 321, the court had before it the Illinois statute on the same subject, which reads as follows:

"The use and operation by a non-resident of a motor vehicle over the highways of the State of Illinois shall be deemed an appointment by such non-resident of the Secretary of State, upon whom may be served all legal process."

The facts in the Illinois case were that the plaintiff brought an action in the Circuit Court of DuPage County against the defendant for damages because of personal injuries sustained in an automobile collision.

By their amended complaint the plaintiffs charged that one of the defendants, Pebler, was in possession and control of an automobile which he was driving for and on behalf of the co-defendants, their agents, servants and employees. The defendants were non-residents of the State of Illinois and were served with process comformably to the provisions of §20a of the Motor Vehicle Act.

The fourth syllabus of the case held:

"4. §20 of the Motor Vehicle Act, athorizing service of process on the Secretary of State as representing non-resident defendants in actions for injury or damage arising from the use or operation of motor vehicles, applies to every non-resident, individual, or corporate, owner or non-owner, using and operating a motor vehicle over Illinois highways, and the language of the act is sufficiently comprehensive to apply to non-residents where the

motor vehicle is being driven either by themselves or by their agents, servants or employees."

On page 311 of the opinion, the court said:

"Plaintiffs contend that the operation and use of an automobile on the highways of this State by a servant, agent or employee of a non-resident corporation, or the individual members of a partnership, render the superior amenable to the quoted provisions of the statute. To sustain the judgment of the appellate court, defendants maintain that §20a is applicable only to individuals who are in actual possession of and driving an automobile within the State, and, conversely, that the statutory provisions for service on nonresidents do not apply to a non-resident principal whose agent, also a non-resident, operates his own or his principal's automobile on the highways of Illinois. A primary purpose of statutory construction is to ascertain the intention of the legislature. In determining this intent courts consider the language used, the evil to be remedied and the object to be attained. * * * If the language employed admits of two constructions, one of which makes the enactment absurd, if not mischievous, while the other renders it reasonable and wholesome, the construction which leads to an absurd result should be avoided."

Also, on page 317, the court said:

"The language of the act is sufficiently comprehensive to apply to non-residents where the motor vehicle is being driven in this State either by themselves or by their agents, servants or employees, at the time when its use or operation causes damage to the person or property of an Illinois resident. Manifestly, we are not warranted, under the guise of strict construction, in nullifying the plain legislative intent by excluding the application of the phrases 'use and operation' and 'use or operation' to cases in which a non-resident individual or foreign corpora-

tion permits a motor vehicle to be driven on the highways of Illinois for their benefit by agents, servants and employees."

See also: Producers & Refiners Corp. v Railroad Co., 73 S. W. 2nd 174 (Tenn.) and, Crabtree v Chevrolet Sales Co. 217 N. C. 587.

We conclude, therefore, that the question as to whether or not Muenkel was, at the time of the accident, then an employee of the defendent, acting within the course and scope of his employment, was a jury question because of the state of the evidence upon this point, and second, if he was then and there acting within the course and scope of his employment, the defendant would be amenable to service of process by virtue of the provisions of §6308-1 GC.

The judgment of the Court of Common Pleas is therefore affirmed. Exceptions may be noted.

MORGAN, J., concurs.
LIEGHLEY, PJ., dissents.

LIEGHLEY, PJ., Dissenting:

During the year 1936, Meier was in the automobile business in Madison, Wisconsin. He apparently had the local agency for White trucks within the territorial limits of the county within which his business was located—Dane County. And, with limits prescribed, he probably had an exclusive agency. In May, 1936, Meier and one Muenkel entered into an agreement by the terms of which Muenkel undertook the sale of White trucks for Meier within Dane County on a 7% commission basis and was allowed a drawing account of $40.00 per week.

Some time thereafter the district representatives of the White Motor Company of Cleveland, Ohio, appeared and accompanied Muenkel on one of his trips to call on prospective customers. The district representative was not satisfied with the work of this field agent. Upon their return they inquired of Meier whether he would be willing to bear the expense of sending Muenkel to Cleveland to attend the White training school at the factory to learn the construction operation and good qualities of the White truck. Upon reflection, Meier finally told Muenkel that he would pay his expenses needed for this schooling—"railroad fare, meals and so on." Whether Meier was impelled to agree to this expenditure with any hope of benefit to himself or by the fact that the suggestion to do so came from the district representative of the company who probably had the power to continue or cancel his dealer contract, does not appear.

The undisputed affirmative testimony of Meier is to the effect that he undertood and expected Muenkel to go to Cleveland by railroad. Instead, unknown to Meier at the time, Muenkel elected to take and use his own automobile to drive about five hundred miles to school in Cleveland, which automobile had never been used in his work or sales efforts for Meier.

On June 3, 1936, Muenkel was operating his automobile in an easterly direction on St. Clair Avenue on his way to the White factory and when he arrived at the intersection of St. Clair and East 12th Street he struck plaintiff who was riding a motorcycle in a northerly direction and thereby inflicted injuries to plaintiff.

When this accident occurred, Meier was not the owner of the car involved in the accident. He was not operating this motor car. The proof wholly fails to show that he either caused it to be driven or was having it driven. The proof affirmatively shows that only railroad transportation was considered.

This proof is sought to be discredited and thereby make a jury question of it by emphasizing the uncertainty of Meier as to just how and when and in what amounts the expenses of Muenkel were paid by him, in his deposition taken by the plaintiff in November, 1940. His books disclosed an expense item of $42.00 and the payment of his drawing account.

These negative, insignificant items from a man in business alone who is called upon to remember and recount them over four years later with mathematical accuracy, and his failure to

324

maintain exact records of his minor financial transactions, should not and do not impeach and discredit his undisputed affirmative assertions and we understand the law so to be, unless more is adduced than lack of memory of details and incomplete records under these circumstances.

Meier was not then in control nor in a position to control any of the acts or conduct of Muenkel, and Muenkel was not then an employee.

Under the facts and circumstances of this case it is our opinion that Muenkel stepped aside and departed from the prescribed course of his alleged employment, if it be assumed that he was in fact an employee at the time of the accident.

Interrelated with the foregoing is another consideration. The master and servant relation is exclusively grounded upon the fact that Meier carried Muenkel on the payroll for his drawing account and paid the expenses of his trip to school, Meier could only have a remote hope of benefit from it.

Meier might benefit if Muenkel was benefited by the schooling, and if Muenkel returned and reentered his employment, which he was not under contract to do, and if Muenkel was able to apply what learning he acquired to the duties of his job with Meier. All of this is obviously potential from the viewpoint of Meier.

It is not unusual or uncommon for an employer to send or permit an employee to go far beyond the sphere of his employment to school at Harvard, Johns Hopkins, DuPonts or some factory to brush up on his branch of learning or bring himself abreast with new developments in the science used by the employee in his particular work with his name on the payroll and his expenses paid.

In such event, does the master and servant relation exist at all times? Does it exist only while the servant is going to and from his boarding house or the theater or his school from day to day? Just when and where is he a student, and when is he a servant of his beneficient master? Or, does the relation begin when he has garnered a new idea or two and the relation spring the burden of carrying them about until his return?

When an employer sends or permits an employe to go to school far beyond the sphere of his employment, although his name is carried on the payroll and his expenses paid by reason of the beneficience of his employer, the relation of master and servant ends or is suspended from the time he leaves the sphere or place of his employment until he returns, unless a contrary intention affirmatively appears. Such relation does not arise from continuing his name on the payroll, and paying the expense of the trip alone.

In the case at bar, it is our opinion that no such relation of master and servant existed at the time of the accident as would justify invoking the rule or doctrine of respondeat superior. This rule presupposes some form of work by the servant at the time for the master in furtherance of the master's business. It requires considerable ingenuity and stretch of the imagination to adjust the facts of this case to this rule. Muenkel was doing no more than operating his car on his way to school, of direct benefit to him and a remote contingent future benefit to Meier at the best. In addition to the parental interest, a father has much the same hope of future benefit when he sends his son to school, with an automobile, that he will become self-sustaining, and no longer burden the family budget for his needed support.

For the foregoing reasons, in our opinion the judgment should be reversed and final judgment rendered for appellant.